**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA

          *Plaintiff,*          CASE No. 2:21-mj-30178

*v.*

                      HON. ANTHONY P. PATTI

MYKIA KING,

          *Defendant.*

_____/

## ORDER DENYING DEFENDANT'S AMENDED MOTION FOR RECONSIDERATION (ECF No. 22)

Defendant Mykia King is charged with conspiracy to commit wire and mail fraud in violation of title 18 U.S.C. § 1349. The complaint alleges, *inter alia*, that Defendant used personal identifying information (PPI), including social security numbers and unauthorized or doctored identification materials, to make cash withdrawals from ATMs throughout the Detroit Metro area and to fraudulently obtain pandemic unemployment assistance (PUA) funds from the State of Michigan. According to the Government, although she attempted to defraud the State out of approximately $930,200, she actually obtained approximately $366,820. (ECF No. 1, PageID.14-21, ¶¶ 22-34.) The Government alleges that King perpetrated at least the PUA crimes in conjunction and with the assistance of Jermaine Rose. (*Id.*, PageID.11-14, ¶¶ 16-22.)

1

Defendant was initially released on bond on June 7, 2021, subject to multiple conditions, including that she "not file any claims for unemployment benefits either for [he]rself or any other person" and that she "not possess any personally identifiable information (PII) of any other person." (ECF No. 11, PageID.39, ¶ x(ii)(iii).) Two months later, the Court revoked her bond and ordered that she be taken into custody after she had been arrested by the Farmington Hills Police Department and found to be in the possession of "several credit cards and gift cards not in [her] name." (ECF No. 14, PageID.52.)

A hearing was held on August 17, 2021, and the Court issued an order revoking her bond the following day, noting in its order that Defendant "was found in actual possession of a false driver's license and six credit, debit or gift cards, all with the names of other women on them, and in constructive possession of a notebook containing names, social security numbers, addresses and banking information of others, in addition to correspondence involving California unemployment benefits in someone else's name." (ECF No. 19, PageID.61.) The Court further noted that Defendant "also appears to have been untruthful to her Pretrial Services officer regarding her arrest, and to the police regarding the reason for having a false driver's license (claiming that she needs it to get into bars for underage drinking when she is at least 28 years old)." (*Id*.) The Court found probable cause to believe that Defendant had committed a federal, state or local

2

crime while on release, as well as clear and convincing evidence that she had

violated the release conditions that she refrain from possessing any personally

identifiable information of any other person and from filing any claims for

unemployment benefits for herself or any other person.  (*Id*., PageID.62.)  The

Court further found, pursuant to 18 U.S.C. § 3148(b), that she is unlikely to abide

by any condition or combination of conditions of release <u>and</u> that there are no

conditions or combination of release conditions that will assure that she not flee or

pose a danger to the safety of any other person and the community.  (*Id*.)  The

Court's reasoning was further fleshed out from the bench and incorporated into its

order by reference.  Among *several other reasons* given by the Court was the

concern that Defendant had not proposed a suitable living situation into which she

could be released.

Currently before the Court is Defendant's amended motion for

reconsideration, pursuant to E.D. Mich. L.Cr.R. 12.1 and E.D. Mich. L.R.

7.1(h)(3), of the order revoking bond.  (ECF No. 22.)[1]  The government has filed a

brief in response. (ECF No. 23.)  In her amended motion for reconsideration,

Defendant proposes two living situations where she could live while on bond and

argues that the Court's decision to revoke bond contained a "palpable defect," *i.e.*,

---

[1] The original motion for reconsideration (ECF No. 20) was denied as moot based
upon the amended version.  (*See* Sept. 6, 2021 Text-Only Order.)

3

"a defect that is obvious, clear, unmistakable, manifest, or plain." *Witzke v. Hiller*, 972 F. Supp. 426, 427 (E.D. Mich. 1997). "[T]he moving party must show that the Court made a mistake based on the record before it, and rectifying the mistake would change the outcome." *Southfield Educ. Ass'n v. Bd. of Educ. of the Southfield Pub. Sch.*, 319 F.Supp.3d 898, 902 (E.D. Mich. 2018). However, a motion for reconsideration that presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted. *Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F.Supp.2d 628, 632 (E.D. Mich. 2001). Here, Defendant has not shown that the Court made a mistake based on the record that was before it, because neither of the proposed living situations was previously suggested to the Court.

For the reasons already explained from the bench at the revocation hearing and its resulting order, even if she had proposed these two alternative living situations at the August 2021 hearing, the Court would nevertheless have revoked her bond and stands by that decision.

Defendant proposes that she be released to live with either her father or her grandmother. (ECF No. 22, PaageID.72-74.) The Court notes from the Pretrial Services report that Defendant told her Pretrial Services officer that she has no contact with her father, Michael King (who has a 1992 federal drug conspiracy conviction for which he served a five-year prison sentence). Leaving aside her

4

father's prior criminal history, it is curious that she would offer his household as a place to reside, considering the apparent lack of a relationship between them.  It is also notable that his household includes his fiancée and their two small children, ages five and two.  (*Id.*, PageID.72 ¶ 6.)  Even if the Court could overlook the apparent estrangement between Defendant and her father, all sides agree that Defendant would have to be prohibited from access to any electronic devices.  This does not appear to be achievable in a home with four other people, two of whom are vulnerable and manipulable children, and one of whom is at or near school age, which is noteworthy during a global pandemic when remote learning is frequently utilized.  Likewise, Defendant's grandmother, a retired postal worker who presumably engages in activities outside the home, cannot be expected to keep an eye on her adult granddaughter at all hours to assure that no electronic devices would be secretly delivered to her by Jermaine Rose, co-conspirators or others.

Given the nature of the crimes with which Defendant is charged, and her demonstrated propensity to keep committing such crimes and lying about them, the Court remains convinced that she is unlikely to abide by any condition or combination of conditions of release.  Defendant's behavior while on bond for a matter of only two months demonstrates that she has no intention of complying with her bond conditions, refraining from ongoing criminal activity, or being forthright and cooperative with her Pretrial Services officer.  Her activities

continue to harm unsuspecting citizens, whose lives and economic well-being may be ruined or significantly disrupted through Defendant's refusal to refrain from obtaining, possessing and using PII belonging to others.  And a State or the Federal Government is likely to sustain harm through Defendant's ongoing fraudulent activity in connection with applying for unemployment benefits in other people's names, as indicated by the California unemployment correspondence found in her possession by the Farmington Hills Police while she was on bond.

More broadly, the Court agrees with the Government that Defendant's past behavior while on pretrial release "shows a flagrant disregard of her bond conditions, the law, and the rights of other individuals."  (ECF No. 23, PageID.77.) Defendant's violations "were not technical or minor ones[,]" and, as the Government points out, "[h]ouse arrest is simply no barrier to crime of this sort," since "it is hardly a heavy lift to obtain access to [an electronic device] and use it surreptitiously."  (*Id.*, PageID.84.)  Neither home incarceration, nor third-party custodianship, nor a prohibition against possessing electronic devices will reasonably assure the safety of the community, or, for that matter, Defendant's compliance with her bond conditions.  Her "actual possession of a false driver's license and six credit, debit or gift cards, all with the names of other women on them," and "[her] constructive possession of a notebook containing names, social security numbers, addresses and banking information of others, in addition to

correspondence involving California unemployment benefits in someone else's name[,]" (ECF No. 19, PageID.61), which is the very type of contraband involved in the pending charges, – not to mention her apparent lack of truthfulness with her Pretrial Services officer and the police – convince the Court that she does not intend to comply with its orders.  She is likely to find or arrange for the means by which she may continue to engage in the unlawful activity for which she has been charged, and this activity can easily take place irrespective of whether she is confined to a relative's home, subjected to electronic monitoring, or placed under third-party custodianship.  Moreover, her apparent ability and willingness to obtain the PII of others and assume their identities, and the substantial monetary gain she is alleged to have amassed through fraudulent means − coupled with the $234,000 legitimate yearly income she reported to Pretrial Services, against which she reports having accumulated only $1,680 in assets − make her a significant flight risk, quite capable of hiding assets and living as a fugitive under a false identity.

For these reasons, and because Defendant failed to demonstrate a palpable defect in the Court's order revoking bond (ECF No. 19), the amended motion for reconsideration (ECF No. 22) is **DENIED**.

It is **SO ORDERED.**

Date: September 24, 2021

Anthony P. Patti
United States Magistrate Judge

7